811 So.2d 217 (2002)
FIRST NATIONAL BANK OF LEWISVILLE, Plaintiff-Appellant.
v.
Frank K. JONES and Claudia Pittman, Defendant-Appellee.
No. 35,708-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 2002.
*218 Kitchens, Benton, Kitchens & Newell by Paul Edward Kitchens, Clinton C. Black, Minden, for Plaintiff-Appellant.
Cave Law Firm by Donald G. Cave, Baton Rouge, for Defendant-Appellee.
Before NORRIS, KOSTELKA and DREW, JJ.
NORRIS, Chief Judge.
The plaintiff, First National Bank of Lewisville ("Bank"), appeals a judgment sustaining a declinatory exception of lack of personal jurisdiction filed by the defendants, Frank Jones and Claudia Pittman ("Pittman"),[1] in a suit to make an Arkansas judgment executory. We affirm.

Facts
On August 10, 1999, the Bank made a 15 day loan for $35,000.00 to Vernon and Nancy Watson. Apparently requiring some form of security, the Bank acquired two faxes, one signed by Mrs. Watson's mother, Claudia Pittman, and the other signed by Mr. Jones, as President of Heritage International Investment, L.L.C.
On February 10, 2000, the Bank filed suit against Vernon and Nancy Watson, Frank Jones, and Claudia Pittman in Lafayette County, Arkansas. On March 28, 2000, default judgments were obtained *219 against Mr. Jones and Ms. Pittman in the amount of $40,877.01. The Bank had these judgments certified, pursuant to La. R.S. 13:4242. On June 13, 2000, the Bank filed a petition in the Fourth JDC seeking recognition and execution of its Arkansas judgment. Defendants responded by filing declinatory exceptions of lack of personal jurisdiction and insufficiency of service of process and citation on July 12, 2000.[2] On January 8, 2001, a hearing was held on the defendants' exceptions. The insufficiency of service and citation exception was denied, while the lack of personal jurisdiction exception was sustained. As a result, the court dismissed the Bank's claim. The Bank has appealed.
In brief, the Bank argues the trial court erred in sustaining the exception of lack of personal jurisdiction. It maintains that on August 19, 1999, Vernon and Nancy Watson, residents of Arkansas, sought to borrow $35,000.00 from the Bank in Lewisville, Arkansas to pay for a gambling debt. The bank demanded some form of surety for the loan. That same day, the bank then allegedly received two faxes, both dated August 10, 1999 and both addressed, "To whom it may concern." Mr. Jones's fax states:
"I have agreed to provide $35,000.00 to Nancy and Vermon Watson within 15 banking days from above date (August 10, 1999)."
Ms. Pittman's fax states:
"Nancy Pittman Watson is my daughter and I will borrow the money that is needed on this house."
No one paid the amount of the loan, however; the Arkansas suit followed, resulting in the judgment which the instant suit seeks to recognize and make executory.
The main thrust of the bank's arguments is that Louisiana courts have recognized mail and wire communications across state lines as constituting the requisite minimum contacts with a foreign state to support the exercise of personal jurisdiction. It cites Bordelon, Hamlin, Theriot & Hardy v. Burlington Broadcasting, Ltd., 94-1839 (La.App. 4 Cir. 3/16/95), 652 So.2d 1082; and Traigle v. Imhoff, 96-325 (La.App. 5 Cir. 10/1/96), 683 So.2d 766. The bank further urges that the trial court erred in questioning the authenticity of these faxed letters, stating that the only proper forum for such an inquiry would be the original Arkansas court. Additionally, the Bank argues that the defendants' faxes were indeed a significant, purposeful, and deliberate contact, thus constituting the International Shoe "minimum contacts."

Discussion
In a suit for recognition of a foreign judgment, the only proper consideration for this court is whether the foreign court had jurisdiction over the parties or the subject matter. Cobb Industries, Inc. v. Hight, 469 So.2d 1060 (La.App. 2 Cir.1985); Crichton v. Succession of Crichton, 232 So.2d 109 (La.App. 2 Cir.), writ refused, 256 La. 274, 236 So.2d 39 (1970), cert denied, 400 U.S. 919, 91 S.Ct. 172, 27 L.Ed.2d 159 (1970). Since the defendants are non residents of Arkansas, for that court to exercise jurisdiction, due process requires that there be sufficient "minimum contacts" between the defendants and Arkansas. The determination of whether minimum contacts exist requires a factual examination of the "relationship among the forum, the defendant, and the litigation." *220 A & L Energy, Inc. v. Pegasus Group, XXXX-XXXX (La.6/29/01), 791 So.2d 1266.[3] The question before the court is whether the Bank's possession of faxes apparently executed in Louisiana by the defendants constitutes sufficient "minimum contacts" to allow an Arkansas court to acquire jurisdiction over the defendants personally. In reviewing a ruling on a declinatory exception raising the objection of lack of personal jurisdiction over a nonresident defendant by an Arkansas court, this court conducts a de novo review of the legal issue of personal jurisdiction. Byers v. Edmondson (La.App. 1 Cir.11/9/01), 807 So.2d 283; Pounds v. Florida Power & Light Co., 99-1091 (La.App. 1 Cir. 5/12/00), 762 So.2d 161, writ denied, XXXX-XXXX (La.9/22/00), 768 So.2d 604.
The Louisiana long-arm statute, La. R.S. 13:3201, provides for the exercise of personal jurisdiction over a nonresident defendant by stating that:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
* * *
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
By legislative enactment of La. R.S. 13:3201 B, the limits of the Louisiana long-arm statute have become co-extensive with the limits of constitutional due process. A & L Energy, Inc. v. Pegasus Group, supra; Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188, 1192 (La.1987). Thus the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. A & L Energy, Inc. v. Pegasus Group, supra; Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790 (La.1987).
Pursuant to International Shoe and its progeny, the bedrock principles for personal jurisdiction over a nonresident defendant require that the defendant "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This fundamental test to satisfy constitutional due process requires that a court evaluate the quality and nature of the defendants' activities in the forum state to determine whether such contacts justify the state's exercise of its power over the person. Id. at 319-21, 66 S.Ct. at 160.
The due process test first enunciated in International Shoe has evolved into a two-part *221 test, the first part being the "minimum contacts" prong, which is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The nonresident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This "purposeful availment" requirement ensures that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or third person. Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
There is a recognized distinction between two types of jurisdiction, general and specific. A state exercises general jurisdiction when the defendant's contacts are not related to the lawsuit. Specific jurisdiction, on the other hand, is exercised when the suit arises out of or is related to the defendant's contacts in the forum. In each instance, courts apply the two-part minimum contacts/fairness analysis to the assertion of jurisdiction. Pounds v. Florida Power & Light Co., supra; deReyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La. 1991).
In the instant case, the Bank alleges that the Arkansas court has specific jurisdiction over the defendants; it urges the faxes purportedly sent to the Bank by the defendants would have been a sufficient minimum contact with Arkansas to establish personal jurisdiction.
We disagree. While a single act may serve as the basis for asserting specific jurisdiction, it must create a substantial connection to the forum. Pounds v. Florida Power & Light Co., supra. Single or occasional acts, where the quality and circumstances of their commission creates only an attenuated affiliation with the forum, are not sufficient to establish personal jurisdiction. Id.; Burger King Corp. v. Rudzewicz, supra.
Here, the defendants' affidavits stated they were not domiciliaries of Arkansas and did not "enter into any contract with, do any business with, or agree to pay anyone's debt" at the Bank. In fact, the sole contacts between Mr. Jones and Ms. Pittman and the Bank were two faxes that came into the Bank's possession by undisclosed means. Neither was signed in Arkansas or bound the defendants as sureties. An agreement of suretyship must contain an absolute expression of intent to be bound. La. C.C. art. 3038; Boyle v. Fringe Facts, Inc., 414 So.2d 1333 (La. App. 2 Cir.1982).[4] In fact, Mr. Jones's fax stated that he, as president of Heritage International Investment, L.L.C., agreed to provide the Watsons, not the Bank $35,000.00. Such wording is indicative of an agreement between Heritage International Investment, L.L.C. and the Watsons, not the Bank. Neither fax ever mentions the Bank. Moreover, Ms. Pittman wrote that she would borrow "the money" that is needed on "this house," without mentioning any specific amount of money *222 or any specific purpose of the loan. As the trial court noted, there are no cover letters showing who faxed these documents or to whom they were faxed or even when they were faxed; they could have been sent to the Watsons, who in turn, unilaterally gave them to the Bank. These letters are addressed only, "To whom it may concern," thus establishing no connection between these defendants and the Bank.
We find these alleged contacts with Arkansas ambiguous and attenuated, such that it would offend traditional notions of fair play and substantial justice for the defendants to defend this suit in Arkansas. The quantity, quality, or nature of their contacts with Arkansas, if any at all, do not render it fair and reasonable to subject them to suit in Arkansas. Furthermore, it is probable that these purported contacts were the result of the unilateral activity of a another party or third person. Based on this record, we do not believe that Mr. Jones and Ms. Pittman would have a reasonable expectation of being haled into an Arkansas court as guarantors on this loan. Such a result would offend due process. Accordingly, we affirm the trial court's sustaining of the declinatory exception of lack of personal jurisdiction over the defendants by the Arkansas court.
We pretermit consideration of the other issue raised by the defendants because they neither appealed nor answered the Bank's appeal. See, La. C.C.P. art. 2133 A.

Conclusion
Accordingly, we affirm the trial court's sustaining of the declinatory exception of lack of personal jurisdiction. Costs are assessed to the appellant, First National Bank of Lewisville.
AFFIRMED.
NOTES
[1] During the course of these proceedings, Mr. Frank Jones died.
[2] The defendants labeled the latter as a dilatory exception; however, under La. C.C.P. art. 926A, it is classified as a declinatory exception. Additionally, we note that while the exception only states insufficiency of citation, in brief, defendants argue insufficiency of service of process as well, which is also a declinatory exception.
[3] See also this writer's dissent in A & L Energy, Inc. v. Pegasus Group, 34,222 (La.App. 2 Cir. 11/3/00), 771 So.2d 248.
[4] Even if Arkansas law were to be applied here, the requirement for the suretyship to be express and strictly construed is the same. See, B.S.G. Foods, Inc. v. Multifoods Distribution Group, Inc., 75 Ark.App. 30, 54 S.W.3d 553 (2001).